**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**Indianapolis Division**

| | | |
|---|---|---|
| TERRI L. GARRIGUS, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | **Case No.**    1:19-cv-1999 |
| | ) | |
| FAY SERVICING, LLC., CODILIS LAW, LLC., | ) | |
| U.S. BANK TRUST NATIONAL ASSOCIATION, | ) | |
| as Trustee for CVF III Mortgage Loan Trust II, and | ) | |
| LAND HOME FINANCIAL SERVICES, INC. | ) | |
| | ) | |
| *Defendants.* | ) | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Terri L. Garrigus ("Garrigus"), by counsel, complains of Defendants, Fay Servicing, LLC. ("Fay"), Codilis Law, LLC. ("Codilis"), U.S. Bank Trust National Association, as Trustee for CVF III Mortgage Loan Trust II ("U.S. Bank"), and Land Home Financial Services, Inc. ("Land Home"), as follows:

### INTRODUCTION

1.     Garrigus is an involuntary "customer" of Fay, locked in a relationship forged without choice. Consequently, she lives in fear of losing her home to a wrongful foreclosure.

### PARTIES, JURISDICTION, AND VENUE

2.     Garrigus is the owner of real property and improvements commonly known as 5337 Bluff View Drive, Indianapolis, Indiana 46217 (the "Home").

3.     Garrigus purchased the Home on or about August 14, 2007, as her primary residence and financed that purchase by a loan evidenced by a note (the "Note") and a mortgage allegedly securing the Note (the "Mortgage") (collectively, the "Loan").

1

4.     The Loan was originated by Advent Mortgage, LLC., ("Advent") and subsequently placed in a mortgage-backed security guaranteed by Fannie Mae.

5.     Fay and Land Home have each been a "servicer" of Garrigus' mortgage as that term is defined by 12 U.S.C. § 2605(i)(2).

6.     Fay is a wholly owned and operated subsidiary of Fay Financial Corporation and is a limited liability company incorporated under the laws of the State of Delaware.

7.     Fay is one of the largest non-bank mortgage servicers in the United States. Fay services mortgage loans in all 50 states, including Indiana, and in this District.

8.     At all times relevant herein, Fay acted and acts as the agent of, and loan servicer for, U.S. Bank.  As a loan servicer, Fay is a partial assignee of the Loan.

9.     U.S. Bank is a federally chartered National Bank, a subsidiary of U.S. Bancorp, headquarted in Minneapolis, Minnesota.

10.     Jurisdiction of claims against Fay and U.S. Bank are conferred by 28 U.S.C. §1331 as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act, the Real Estate Settlement Procedures Act, 12 U.S.C. §2601, *et seq*. (the "RESPA"), the Fair Debt Collection Practices Act, 15 U.S.C. §1692, *et seq*. (the "FDCPA"), and the Truth In Lending Act, 15 U.S.C. § 1639 (the "TILA").  This action is specifically filed to enforce regulations promulgated by the Consumer Finance Protection Bureau (the "CFPB"), which became effective on January 10, 2014, and specifically, 12 C.F.R. §1024.35 and §1024.36 of Regulation X.

11.     This Court has supplemental jurisdiction to hear all state law claims pursuant to 28 U.S.C. §1367.

12.     Venue is proper pursuant to 28 U.S.C. § 1391 because the property that is the

subject of the action, the Home, is located in this District.

## SUMMARY OF FEDERAL CLAIMS

### The RESPA & Reg. X

13.     RESPA, originally enacted in 1974, was designed to ensure consumers in real estate transactions receive timely information on the nature and costs of the loan settlement process and to protect them from abusive lending practices.

14.     The Cranston-Gonzalez National Affordable Housing Act of 1990 expanded the scope of RESPA by addressing mortgage servicer practices.

15.     In response to evidence of additional servicer abuses during the preceding mortgage crisis, RESPA was amended in 2010 by the Dodd-Frank Act to further expand on the aforementioned protections.

16.     RESPA's provisions relating to loan servicing are to be construed liberally so as to carry out the statue's remedial consumer protection purpose. *Medrano v. Flagstaff Bank*, 704 F.3d 661, 665 (9th Cir. 2012).

17.     In January of 2013, the CFPB issued several final rules concerning mortgage markets in the United States, pursuant to the Dodd-Frank Act, Public Law No. 111- 203, 124 Stat. 1376 (2010).

18.     Specifically, the CFPB issued the RESPA Mortgage Servicing Final Rules, 78 F.R. 10695 (Regulation X) (February 14, 2013), which became effective on January 10, 2014.

19.     The Loan in the instant matter is a "federally related mortgage loan" as said term is defined by 12 C.F.R. §1024.2(b).

20.     Fay is subject to the aforesaid regulations and does not qualify for the "small servicers" exception, as such term is defined in 12 C.F.R. §1026.41(e) (4), nor the exemption for a "qualified lender," as such term is defined in 12 C.F.R. §617.700.

21.     Garrigus asserts a private right of action under RESPA pursuant to 12 U.S.C. §2605(f) for the claimed breaches of the specific rules set forth under Regulation X.

The FDCPA

22.     Congress enacted the FDCPA to prohibit the "[u]se of abusive, deceptive, and unfair debt collection practices." 15 U.S.C §1692a.

23.     The FDCPA applies to debt collectors, not original creditors. Fay is a "debt collector" as defined by 15 U.S.C. § 1692a (6) as it obtained servicing rights to the Loan and began servicing the Loan after it was in default.

24.     Garrigus is a "consumer" as defined by 15 U.SC. § 1692a (3), and the Loan is a debt as defined by 15 U.SC. § 1692A (4).

25.     Garrigus asserts a private right of action under the FDCPA pursuant to 15 U.S.C. §1692k, against Codilis and Fay for their willful or deliberately indifferent conduct in connection with collection of the Loan.

Garrigus' Chapter 13 Bankruptcy Proceeding

26.     On March 26, 2015, Garrigus filed a bankruptcy case pursuant to Chapter 13 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Indiana, Case No. 15-02399-JJG-13 (the "Bankruptcy Case").

27.     Garrigus filed the Bankruptcy Case to cure all pre-petition defaults on the Loan.

28.     Shortly after filing, Garrigus proposed a Chapter 13 Plan (the "*Chapter 13 Plan*"), which was amended on September 4, 2015. [Filing No. 26].

29.     On October 7, 2015, the Bankruptcy Court entered an *Order Confirming Amended Chapter 13 Plan*. [Filing No. 30].

30.     Pursuant to the confirmed *Chapter 13 Plan*, Garrigus was to make regular monthly payments of $976.00 to the Chapter 13 Trustee, from which CitiMortgage would receive approximately $587.97 per month to maintain the monthly payments it was owed, plus an additional sum to address all arrearage (originally estimated by Garrigus to be $5,994.87).

31.     Ventures Trust 2013-I-H-R by MCM Capital Partners, LLC its Trustee appeared in the Bankruptcy Case and participated by means of the filing of its *Proof of Claim* (Claim No. 10 dated September 3, 2015) [Claim Filing No. 10-1].

32.     The *Proof of Claim* asserted a secured claim in the amount of $89,505.60.00 and an arrearage claim of $5,994.87.

33.     Trifera, LLC, *as Transferee*, filed a Transfer of Claim, from OHA Newbury Ventures, *as Transferor* [Filing No. 37].

34.     Trifera, LLC filed an Amended Claim on May 10, 2018 [Claim Filing No. 10-2].

35.     The Amended *Proof of Claim* asserted a secured claim in the amount of $89,505.66 and an arrearage claim of $5,994.87.

36.     Trifera, LLC filed a second Amended Claim on June 15, 2012 [Claim Filing No. 10-3].

37.     The second Amended *Proof of Claim* asserted a secured claim in the amount of $89,505.66 and an arrearage claim of $5,994.87.

38.     From September, 2015 to June, 2018, Garrigus made timely and adequate payments to the Trustee in accordance with the terms of the Chapter 13 Plan.

39.     On July 5, 2018, the Chapter 13 Trustee filed a *Notice of Final Cure Payment*

[Filing No. 44] pursuant to FRBP § 3002.1(f), stating the amount to cure the prepetition default ($5,994.87 in arrearage) had been paid in full and that Garrigus had completed all payments required under the Chapter 13 Plan.

40.     On July 17, 2018, Trifera, LLC. filed a *Response to Notice of Final Cure Payment* under Claim Number 10 on the Claims Register, "[agreeing] that the Debtor(s) have paid in full the amount required to cure the prepetition default on the creditor's claim." [Claim Filing No. doc].

41.     Thus, under the penalties for perjury, Fay (via its predecessors in interest) affirmed that upon receipt of the aforementioned payment Garrigus was current with all post-petition payments consistent with §1322(b)(5) of the Bankruptcy Code including all fees, charges, expenses, escrow, and costs.

42.     On August 21, 2018, an *Order of Discharge* was entered. [Filing No. 47].

43.     In accordance with the *Chapter 13 Plan*, *Order of Discharge*, *Notice of Final Cure Payment*, and *Response to Notice of Final Cure Payment*, the Loan was to be reinstated according to the original terms and any right of Fay or U.S. Bank to recover any amounts alleged to have arisen prior to filing but not included in the Proof of Claim or a Notice of Fees was thereby extinguished.

44.     Thereafter, Garrigus began making timely and adequate monthly payments to Fay pursuant to the terms of the Loan. This continued until Fay began rejecting Garrigus' payments in December of 2018.

<u>Land Home's and Fay's Servicing Misconduct – Fees</u>

45.     Sometime in early February of 2019, Garrigus obtained a partial reproduction of the life of loan mortgage transactional history ("Life of Loan History") for the Loan from the

system of record used by Fay.  The Life of Loan History reflects the current mortgage balance, the date of receipt and application of all payments, the date of assessment for any late fees or charges, and the recording of any corporate advances for any legal fees or charges, including without limitation property inspection fees, legal fees, escrow fees, processing fees or any other collateral charges.

46.     A true and accurate copy of the partial Life of Loan history provided by Fay is attached hereto as "Exhibit A".

47.     The partial Life of Loan History provided by Fay did not include any information relative to the period of time beginning in January of 2015 and ending in November of 2018.

48.     Fay is required to have a complete Life of Loan History in its servicing file.

49.     By information and belief, Land Home assessed then reimbursed itself for unreasonable and impermissible fees, expenses, or charges during the Bankruptcy Case.

50.     By information and belief, Land Home did not provide notice of these fees or expenses to the Bankruptcy Court as required by FRBP § 3002.1.

51.     After the Bankruptcy Case and the entry of the *Order of Discharge*, Fay continued to assess expenses to the Loan despite Garrigus being legally and factually current. These charges or expenses include, but are not limited to, "Property Pres Corp Adv" of $14.25 on November 21, 2018, December 19, 2018, and December 24, 2018.

52.     Fay had no reasonable basis for applying the charges or expenses described above, let alone twice in December.

53.     Neither Fay nor U.S. Bank provided Garrigus "notice at the time of or prior to any inspection specifying reasonable cause for the inspection" as required by the Mortgage.

54.     As of November 6, 2018, Fay was tracking and seeking to collect upon charges exceeding $5,753.25. By information and belief, these charges were assessed before or during the Bankruptcy Case but were not included in the Proof of Claim or in compliance with Fed. R. Bank. Proc. § 3002.1.

55.     To date, Fay is still seeking to collect upon charges of $5,753.25.

56.     On November 10, 2018, Fay reimbursed itself for fees totaling $115.17 incurred before or during the Bankruptcy Case but not include in the Proof of Claim or in compliance with Fed. R. Bank. Proc. § 3002.1.

<u>Land Home's and Fay's Servicing Misconduct – Misapplication of Payments & Missing Funds</u>

57.     In addition to the foregoing, during the Bankruptcy Case and thereafter, Land Home then Fay maintained a large surplus balance in Suspense instead of timely applying those funds to principal, interest, and escrow.

58.     On November 11, 2018, the balance of funds in Suspense exceeded $10, 868.93.

59.     The balance of funds held in Suspense by Land Home then Fay greatly exceeded any monthly payment obligation Garrigus has ever owed on the Loan.

60.     The retention of funds in excess of a regular payment amount in Suspense, instead of properly applying these funds to principal, interest, and escrow as contractually and legally obligated, caused Land Home and Fay to charge Garrigus with fees, charges, and additional interest without basis.

61.     The retention of funds in Suspense in excess of Garrigus' regular monthly payment amount, and for extended periods of time, deprived her of the time value of that money as interest was not paid towards the balance.

62.     On or about November 13, 2018, Fay withdrew $10,868.93 from Suspense and applied the funds to Garrigus' monthly payment obligation due in March of 2016, April of 2016, May of 2016, June of 2016, July of 2016, August of 2016, September of 2016, October of 2016, October of 2016, November of 2016, December of 2016, January of 2017, February of 2017, March of 2017, April of 2017, May of 2017, June of 2017, July of 2017, and August of 2017.

63.     The payment applications set forth above were untimely and in violation of the requirements of the Loan.

64.     In December of 2018, Fay began rejecting Garrigus' payments.

Fay's Servicing Misconduct – Mismanagement of Escrow Account

65.     At the time it assumed the servicing of the Loan, Fay was required to perform an audit of the loan history to verify its accuracy.

66.     The RESPA requires that a lender or servicer perform an escrow account analysis at the time an account is established and annually thereafter. *See* 12 U.S.C. § 2609(c).

67.     Also pursuant to the RESPA, if the terms of any federally related mortgage loan require the borrower to make payments to the servicer of the loan for deposit into an escrow account for the purpose of assuring payment of taxes, insurance premiums, and other charges with respect to the property, Fay and Land Home were required to determine if an escrow surplus, shortage, or deficiency exists at the end of every twelve-month computation period.  *See* Reg. X § 1024.17.

68.     During the Bankruptcy Case, Land Home failed to perform an annual escrow analyses annually or determine if an escrow surplus, shortage, or deficiency existed. As a result, Land Home permitted the creation of a large escrow balance. *See, e.g., In re Laskowski*, 384 B.R.

518 (Bankr. N.D. Ind. 2008) (bankruptcy exemption in Regulation X applies only to sending of annual statement and does not relive servicer of obligation to conduct annual escrow analysis).

69.     Fay has failed to perform an escrow analysis annually or determine if an escrow surplus, shortage, or deficiency existed. As a result, Fay permitted the creation of a large escrow balance.

70.     On or about November 13, 2018, Garrigus' escrow balance was $9,987.87.

71.     On January 17, 2019, Garrigus' escrow balance was $10,472.58.

72.     The RESPA prohibits a servicer from requiring a borrower to pay into an escrow account a monthly amount greater than one-twelfth of the total of all disbursements payable during the computation year. *See* 12 U.S.C. § 2609(A); Reg. X §1024.17(c)

73.     As reflected above, Fay has required Garrigus to pay amounts into escrow greater than one-twelfth of the total of all disbursements payable during any computation year.

74.     On or about November 13, 2018, Fay withdrew $10,868.93 from Suspense and applied the funds to Garrigus' monthly payment obligation due in March of 2016, April of 2016, May of 2016, June of 2016, July of 2016, August of 2016, September of 2016, October of 2016, October of 2016, November of 2016, December of 2016, January of 2017, February of 2017, March of 2017, April of 2017, May of 2017, June of 2017, July of 2017, and August of 2017.

75.     From each payment application described above, Fay applied $378.47 to escrow.

76.     At the time each payment application described above was made, Garrigus' escrow balance was already greater than one-twelfth of the total of all disbursements that would be payable in any calendar year.

77.     On November 13, 2018, less than three months from the entry of the *Order of Discharge*, Garrigus was current on her monthly payment obligation to Fay and the Loan was not otherwise in default.

78.     If a borrower is current on their monthly payment obligation, a servicer is required to refund to the borrower any surplus equal to or greater than $50.00 within 30 days. *See* Reg. X § 1024.17(f) (2) (i) and Reg. X 1024.17(f) (2) (i).

79.     On January 17, 2017, and despite characterizing the refund as "Funds Disbursed from Suspense Account", Fay withdrew $587.97 from Garrigus' escrow account and remitted the same amount to her via check.

80.     A true and accurate copy of the refund check issued by Fay to Garrigus in the amount of $587.97 on January 17, 2019 is attached hereto as "Exhibit B."

81.     Despite the foregoing, and despite Garrigus requests that they do so, Fay has failed to refund any other surplus escrow funds to her.

82.     An escrow account is a form of trust account.

83.     Fay had no right or authority to credit or debit funds to escrow outside the requirements of the Loan or without Garrigus' informed consent.

84.     By maintaining a large surplus escrow balance, Fay caused Garrigus to pay amounts she was not required to pay, depriving her of the time value of that money, and caused her to incur fees, penalties and/or interest that she would not have had the funds not been misapplied.

85.     By maintaining a large surplus escrow balance, and continuing to fund the escrow account, instead of those funds being refunded or applied to principal and interest as they were

obligated, Fay deprived Garrigus of the ability to claim a tax deduction for the 2018 tax year that she would have been otherwise been entitled to.

86.     By misapplying funds to escrow instead of principal and interest, Fay further contributed to the manufactured default status it created that resulted in the Foreclosure Case.

<u>Land Home's and/or Fay's Servicing Misconduct – Failure to Timely Pay Taxes</u>

87.     The RESPA requires a servicer to make payments from an escrow account for taxes "in a timely manner." *See* 12 U.S.C. 2605(g)

88.     Section 1024.17(k) of Regulation X provides that a payment shall be considered timely if it is made on or before the dealing to avoid a penalty.

89.     Garrigus owed property taxes as described below that were to be paid from her escrow account.

90.     The terms of the Loan require Garrigus to make payments to an escrow account. That escrow account was properly funded at the time the taxes became due.

91.     Land Home and/or Fay have failed to pay property taxes in a timely manner. As a result, Garrigus has been forced to fund the payment of the following penalties:

| <u>Description</u> | <u>Amount</u> |
|---|---|
| Penalty – 15.16 Spring Tax | $82.65 |
| Penalty – Spring SA Base: GG16206043 | $3.20 |
| Penalty – Spring SA Base: CW16057811 | $4.15 |
| Penalty – Fall SA Base: GG16206043 | $3.20 |
| Penalty – Fall SA Base: CW16057811 | $4.14 |
| Penalty – 15/16 Fall Tax | $82.66 |
| Penalty – 16/17 Spring Tax | $49.77 |
| Penalty – Spring SA Base: GG16206043 | $1.60 |
| Penalty – Spring SA Base: CW172337318 | $2.16 |
| Penalty – 16/17 Fall Tax | <u>$49.76</u> |
| | $283.29 |

92.     A true and accurate copy of the PVDNet Cash History provided by the Marion County Treasurer's Office is attached hereto as "Exhibit C."

<u>Fay's Attempts to Collect Amounts Not Owed – Written Correspondence</u>

93.     On or about November 27, 2018, Fay forwarded a Mortgage Statement to Garrigus, seeking immediate payment of $9,237.22 and declaring a delinquency of "452 days."

94.     On or about November 27, 2018, Garrigus did not owe $9,237.22 nor was she delinquent.

95.     The Mortgage Statement dated November 27, 2018 states: "Failure to bring the account current may result in additional fees or expenses, and in certain instances, you may risk foreclosure – the loss of your home."

96.     The Mortgage Statement dated November 27, 2018 also reflects an escrow balance of $9,987.87 and suggests that Garrigus had failed to make her monthly payments in June, July, August, September, October, and November of 2018.

97.     Garrigus made timely and adequate payments to Fay in June, July, August, September, October, and November of 2018.

98.     A true and accurate copy of the Mortgage Statement dated November 27, 2018 is attached hereto as "Exhibit D".

99.     On or about December 10, 2018, Fay forwarded a Mortgage Statement to Garrigus, seeking immediate payment of $9,825.19 and declaring a delinquency of "465 days."

100.    On or about December 10, 2018, Garrigus did not owe $9,825.19 to Fay nor was she delinquent.

101.    The Mortgage Statement dated December 10, 2018 states: "Failure to bring the account current may result in additional fees or expenses, and in certain instances, you may risk foreclosure – the loss of your home."

102.   The Mortgage Statement dated December 10, 2018 also reflects an escrow balance of $9,919.03 and suggests that Garrigus had failed to make her monthly payments in July, August, September, October, November, and December of 2018.

103.   Garrigus made timely and adequate payments to Fay in July, August, September, October, November, and December of 2018.

104.   A true and accurate copy of the Mortgage Statement dated December 10, 2018 is attached hereto as "Exhibit E".

105.   On December 14, 2018, four days after mailing the Mortgage Statement described above, Fay mailed Garrigus a Default Notice, seeking payment "of $15,004.72 by 01/18/2019.

106.   The Default Notice dated December 14, 2018 also reflects a "Corporate Advance Balance" of $5,767.50.

107.   A true and accurate copy of the Default Notice dated December 14, 2018, is attached hereto as "Exhibit F".

108.   As described above, on or about December 27, 2018, Fay generated an Escrow Account Disclosure Statement reflecting an escrow surplus of $15,541.15 and reducing the escrow portion Garrigus' monthly payment obligation from $378.47 to $113.54.

109.   Fay has not explained why Garrigus' escrow balance went from $9,919.03 on December 10, 2018 to $15,541.15 on December 27, 2018.

110.   On or about January 14, 2019, Fay forwarded a Mortgage Statement to Garrigus, seeking immediate payment of $10,413.16 and declaring a delinquency of "500 days."

111.   On or about January 14, 2019, Garrigus did not owe $10,413.16 to Fay nor was she delinquent.

112.   Fay did not and has not explained how Garrigus could be "465 days" delinquent on December 10, 2018 then "500 days" delinquent on January 14, 2019.

113.   The Mortgage Statement dated January 14, 2019 states: "Failure to bring the account current may result in additional fees or expenses, and in certain instances, you may risk foreclosure – the loss of your home."

114.   The Mortgage Statement dated January 15, 2019 also reflects an escrow balance of $9,884.61 and suggests that Garrigus had failed to make her monthly payments in August, September, October, November, and December of 2018 as well as in January of 2019.

115.   Garrigus made timely and adequate payments to Fay in August, September, October, November, and December of 2018.

116.   A true and accurate copy of the Mortgage Statement dated January 14, 2019 is attached hereto as "Exhibit G".

117.   On or about February 11, 2019, Fay forwarded a Mortgage Statement to Garrigus, seeking immediate payment of $10,736.21 and declaring a delinquency of "528 days."

118.   On or about February 11, 2019, Garrigus did not owe $10,736.21 to Fay nor was she delinquent.

119.   The Mortgage Statement dated February 11, 2019 states: "Failure to bring the account current may result in additional fees or expenses, and in certain instances, you may risk foreclosure – the loss of your home."

120.   The Mortgage Statement dated February 11, 2019 also reflects an escrow balance of $9,884.61 and suggests that Garrigus had failed to make her monthly payments in September, October, November, and December of 2018 as well as January and February of 2019.

121.     A true and accurate copy of the Mortgage Statement dated February 11, 2019 is attached hereto as "Exhibit H".

122.     On February 15, 2019, Fay directed correspondence to Garrigus stating: "Your account is in active pre foreclosure or foreclosure status. We are unable to accept anything less than the full amount due."

123.     A true and accurate copy of the aforementioned correspondence dated February 15, 2019 is attached hereto as "Exhibit I."

124.     On or about March 11, 2019, Fay forwarded a Mortgage Statement to Garrigus, seeking immediate payment of $18,220.88 and declaring a delinquency of "556 days."

125.     On or about March 11, 2019, Garrigus did not owe $18,220.88 to Fay and, but for Fay's rejection of payments, she was not delinquent.

126.     The Mortgage Statement dated March 11, 2019 states: "You are late on your monthly payments. As a result, the balance of your loan has been accelerated."

127.     The Mortgage Statement dated March 11, 2019 also reflects an escrow balance of $9,867.40.

128.     A true and accurate copy of the Mortgage Statement dated March 11, 2019 is attached hereto as "Exhibit J".

129.     Each letter, statement, or notice described above sought immediate payment of amounts Garrigus did not owe and included threats of foreclosure.

130.     Each letter, statement, or notice described above contained false and misleading statements in that but for Fay's servicing errors and rejection of payments, Garrigus was not in default or delinquent at the time they were mailed.

131.    Each letter, statement, or notice described above exacerbated the emotional distress caused to Garrigus.

132.    Each Notice of Default set forth above was sent via certified mail, the cost of which was assessed to the Loan.

<u>Garrigus' Efforts to Seek Information from Land Home and Have Errors Corrected</u>

133.    By letter dated February 22, 2019, Garrigus directed correspondence to Land Home captioned "Request for Information Pursuant to Section 1024.36 of Regulation X" ("Land Home RFI No. 1") in hopes of obtaining documents necessary to ascertain the basis of the default alleged by Fay.

134.    A true and accurate copy of Land Home RFI No. 1 is attached hereto as "Exhibit K".

135.    Land Home received Land Home RFI No. 1 on February 25, 2019, at the address it designated for receipt of such notices, as evidence by USPS Certified Mail Tracking No. 70172620000078863416.

136.    In response to RFI No. 1, Land Home sent correspondence dated February 28, 2019 requesting that Garrigus provide the correct address of the Home and a correct loan number for the Loan.

137.    Land Home's response to Land Home RFI No.1 did not include any of the information or documentation sought by Garrigus via Land Home RFI No. 1.

138.    Land Home's response to Land Home RFI No. 1 was unreasonable in that Garrigus provided sufficient information with Land Home RFI No. 1 to enable Land Home to identify the Loan being inquired about; including the correct address of the Home.

139.    Land Home's failure to provide the documents set forth above, requested in Land Home RFI No. 1, caused Garrigus an informational injury and caused her to expend addition time and resources trying to obtain documents and information necessary to address the problems with the Loan.

140.    Without a complete Life of Loan History or the information contained in the escrow analyses, it was much harder for Garrigus to identify the errors alleged herein.

141.    Fay knew and knows that it is much harder for borrowers like Garrigus to identify servicing errors without a complete Life of Loan History.

142.    By letter dated March 8, 2019, Garrigus directed correspondence to Land Home captioned "Second Request for Information Pursuant to Section 1024.36 of Regulation X" ("Land Home RFI No. 2") in hopes of obtaining documents necessary to ascertain the basis of the default alleged by Fay. Garrigus included an authorization, will her full social security number and address, along with Land Home RFI No. 2.

143.    A true and accurate copy of Land Home RFI No. 2 is attached hereto as "Exhibit L".

144.    Land Home received Land Home RFI No. 2 on March 11, 2019, at the address it designated for receipt of such notices, as evidence by USPS Certified Mail Tracking No. 70172620000078864048.

145.    In response to Land Home RFI No. 2, Land Home sent correspondence dated March 19, 2019 requesting that Garrigus provide the correct address of the Home and correct loan number.

146.     Land Home's response to Land Home RFI No. 2 was unreasonable in that Garrigus provided sufficient information with Land Home RFI No. 2 to enable Land Home to identify the Loan being inquired about; including the correct address of the Home.

147.     Land Home's response to Land Home RFI No. 2 did not include any of the information or documentation sought within Land Home RFI No. 2.

148.     Land Home's failure to provide the documents set forth above, requested in Land Home RFI No. 2, caused Garrigus an informational injury and caused her to expend addition time and resources trying to obtain documents and information necessary to address the problems with the Loan.

149.     Without a complete Life of Loan History or the information contained in the escrow analyses, it was much harder for Garrigus to identify the errors alleged herein.

150.     Land Home knew and knows that it is much harder for borrowers like Garrigus to identify servicing errors without a complete Life of Loan History.

151.     By letter dated April 1, 2019, Garrigus directed correspondence to Land Home captioned "Third Request for Information Pursuant to Section 1024.36 of Regulation X" ("Land Home RFI No. 3") in hopes of obtaining documents necessary to ascertain the basis of the default alleged by Fay. Garrigus included an authorization, will her full social security number and address, along with RFI No. 3.

152.     A true and accurate copy of Land Home RFI No. 3 is attached hereto as "Exhibit M".

153.     Land Home received Land Home RFI No. 3 on April 1, 2019, at the address it designated for receipt of such notices, as evidence by USPS Certified Mail Tracking No. 70172620000078864284.

154.   In response to RFI No. 3, Land Home sent correspondence dated April 3, 2019 requesting that Garrigus provide the correct address of the Home and correct loan number.

155.   Land Home's response to Land Home RFI No. 3 did not include the requested copies of: (i) a complete Life of Loan History; or (ii) the last two analyses performed on the Loan's escrow account.

156.   Land Home's response to RFI No. 3 was unreasonable in that Garrigus provided sufficient information with RFI No. 3 to enable it to identify the Loan being inquired about including the correct address of the Home.

157.   Land Home's failure to provide the documents set forth above, requested in Land Home RFI No. 3, caused Garrigus an informational injury and caused her to expend addition time and resources trying to obtain documents and information necessary to address the problems with the Loan.

158.   Without a complete Life of Loan History or the information contained in the escrow analyses, it was much harder for Garrigus to identify the errors alleged herein.

159.   Fay knew and knows that it is much harder for borrowers like Garrigus to identify servicing errors without a complete Life of Loan History.

160.   By letter dated April 15, 2019, Garrigus directed correspondence to Land Home captioned "Request for Information Pursuant to Section 1024.36 of Regulation X" ("Land Home RFI No. 4") in hopes of obtaining documents necessary to ascertain the basis of the default alleged by Fay.

161.   A true and accurate copy of Land Home RFI No. 4 is attached hereto as "Exhibit N".

162.    Land Home received Land Home RFI No. 4 on April 17, 2019, at the address it designated for receipt of such notices, as evidence by USPS Certified Mail Tracking No. 70172620000078864444.

163.    Land Home did not acknowledge receipt of RFI No. 4 within five business days as required by 12 C.F.R. 1024.36(d) (2).

164.    To date, Land Home has not provided any information or documentation responsive to Land Home RFI No. 1, Land Home RFI No. 2, Land Home RFI No. 3, or Land Home RFI No. 4.

165.    On May 16, 2019, Garrigus directed correspondence to Land Home titled "Notice of Errors under 12 C.F.R. §1024.35(b)(11)" ("Land Home NOE No. 1") identifying servicing errors including but not limited to: (i) failing to promptly credit payments as required by Reg. Z, 12 C.F.R. 1026.36(c)(1) and/or 15 U.S.C. § 1639f,  constituting multiple defined errors as set forth in 12 C.F.R. § 1024(b)(3); (ii)  improperly imposing fees for which it had no reasonable to basis to impose; (iii) failing to conduct annual escrow analyses; and (iv) failing to respond provide documents and information contained in Land Home RFI No. 1, Land Home RFI No. 2, and Land Home RFI No. 3.

166.    A true and accurate copy of Land Home NOE NO. 1 is attached hereto as "Exhibit O".

167.    To date, Land Home has not acknowledge receipt of, responded to, or taken any action to correct any of the distinct errors identified in Land Home NOE No. 1.

Garrigus' Efforts to Seek Information from Fay and have Errors Corrected

168.    By letter dated January 25, 2019, Garrigus directed correspondence captioned "Request for Information Pursuant to Section 1024.36 of Regulation X" ("RFI No. 1") in hopes of obtaining documents necessary to ascertain the basis of the default alleged by Fay.

169.    A true and accurate copy of RFI No. 1 is attached hereto as "Exhibit P".

170.    Fay received RFI No. 1 on January 29, 2019, at the address it designated for receipt of such notices, as evidence by USPS Certified Mail Tracking No. 70172620000078861528.

171.    In response to RFI No. 1, Fay sent correspondence dated February 6, 2019 and provided some of the documents previously requested by Garrigus.

172.    Fay's response to RFI No.1 did not include the requested copies of: (i) a complete Life of Loan History; or (ii) the last two analyses performed on the Loan's escrow account.

173.    Fay's failure to provide the documents set forth above, requested in RFI No. 1, caused Garrigus an informational injury and caused her to expend addition time and resources trying to obtain documents and information necessary to address the problems with the Loan.

174.    Without a complete Life of Loan History or the information contained in the escrow analyses, it was much harder for Garrigus to identify the errors alleged herein.

175.    Fay knew and knows that it is much harder for borrowers like Garrigus to identify servicing errors without a complete Life of Loan History.

176.    Fay is required to have a complete Life of Loan History relative to the Loan in its servicing file.

177.    Fay has a complete Life of Loan History relative to the Loan in its servicing file.

178.    Following an initial review of the partial Life of Loan History, and in response to Fay's failure to provide documents or resolve errors identified during its calls with her, Garrigus

22

directed correspondence titled "Notice of Errors under 12 C.F.R. §1024.35(b)(11)" ("NOE No. 1"), dated February 14, 2019 for: (i) failing to promptly credit payments as required by Reg. Z, 12 C.F.R. 1026.36(c)(1) and/or 15 U.S.C. § 1639f,  constituting multiple defined errors as set forth in 12 C.F.R. § 1024(b)(3); (ii) failing to provide an accurate payoff statement as required by 1026.36(c) of Reg. Z and 12 C.F.R. 1024.35(b)(6) ; (iii) failing to accept a payment that conforms to the servicer's written requirements for the borrower to make, i.e., Fay's rejection of Garrigus' December 2018, January 2019, and February 2019 monthly installment payment, three (2) defined errors as set forth in 12 C.F.R. § 1024.35(b)(1) and/or 12 C.F.R. 1024.35(b)(11);(iv) improperly imposing fees for which it had no reasonable to basis to impose; including but not limited to "Property Pres Corp Adv" of $14.25 and $9.82 on December 19, 2018. 765.00.

179.    In the event it were to determine no error had occurred, NOE No.1 also requested that Fay provide all documents relied upon in reaching that determination as required by Reg. X, 12 C.F.R. §§ 1024.35(e)(1).

180.    A true and accurate copy of NOE No. 1 is attached hereto as "Exhibit Q".

181.    By and through NOE No. 1 and her numerous communications with Fay representatives, Garrigus brought errors to Fay's attention and requested that the errors be investigated and corrected.

182.    Fay received NOE No. 1, at the address it designated for receipt of such notices, on February 19, 2019, as evidenced by USPS Certified Mail Tracking No. 70172620000078863584.

183.    By letter dated February 15, 2019, Garrigus directed correspondence captioned "Request for Information Pursuant to Section 1024.36 of Regulation X" ("RFI No. 2") in hopes of obtaining documents necessary to ascertain the cause of her alleged default.

184.     A true and accurate copy of RFI No. 2 is attached hereto as "Exhibit R".

185.     Fay received RFI No. 2 on February 19, 2019, at the address it designated for receipt of such notices, as evidence by USPS Certified Mail Tracking No. 70172620000078863560.

186.     Following a more thorough review of the partial Life of Loan History and documents generated by Fay, Garrigus directed correspondence titled "Second Notice of Errors under 12 C.F.R. §1024.35(b)(11)" ("NOE No. 2"), dated February 20, 2019, for: (i) failing to adequately respond to RFI No. 1 by failing to provide a complete life of loan mortgage transactional history (instead only providing a transaction history from approximately September of 2018 to the date of requests and a transaction history ending in 2015) or copies of the last two escrow analysis performed, two separate and distinct errors as set forth in 12 C.F.R. § 1024.35(b)(11); (ii) failing to refund Garrigus' escrow account surplus as required by § 1024.34(b), a defined error as set forth in 12 C.F.R. § 1024.35 (b)(4); failing to acknowledge receipt of RFI No. 2 and/or NOE No. 1 within five (5) business days as required by 12 C.F.R. 1024.36(d)(2).

187.     In the event it were to determine no error had occurred, NOE No. 2 also requested that Fay provide all documents relied upon in reaching that determination as required by Reg. X, 12 C.F.R. §§ 1024.35(e)(1).

188.     A true and accurate copy of NOE No. 2 is attached hereto as "Exhibit S".

189.     By and through NOE No. 1 and NOE No. 2, Garrigus brought errors to Fay's attention and requested that the errors be investigated and corrected.

190.    Fay received NOE No. 2, at the address it designated for receipt of such notices, on February 25, 2019, as evidenced by USPS Certified Mail Tracking No. 70172620000078863478.

191.    Fay did not acknowledge receipt of NOE No. 2 within five business days as required by 12 C.F.R. 1024.36(d) (2).

192.    Thereafter, Fay took no action to correct any of the distinct errors identified in NOE No. 2.

193.    On February 21, 2019, Garrigus directed correspondence to Fay titled "Third Notice of Errors under 12 C.F.R. §1024.35(b)(11)" ("NOE No. 3") identifying servicing errors including: (i) improperly imposing fees for which it had no reasonable to basis to impose; including but not limited to "Recoverable Corporate Advances" of $6,765.00.

194.    NOE No. 3 also requested the aforementioned fees be removed from the Loan.

195.    In the event it were to determine no error had occurred, NOE No. 3 also requested that Fay provide all documents relied upon in reaching that determination as required by Reg. X, 12 C.F.R. §§ 1024.35(e)(1).

196.    A true and accurate copy of NOE No. 3 is attached hereto as "Exhibit T".

197.    By and through NOE No. 1, NOE No. 2, and NOE No. 3, Garrigus brought errors to Fay's attention and requested that the errors be investigated and corrected.

198.    Fay received NOE No. 3, at the address it designated for receipt of such notices, on February 25, 2019, as evidenced by USPS Certified Mail Tracking No. 70172620000078863355.

199.    Fay did not acknowledge receipt of NOE No. 3 within five business days as required by 12 C.F.R. 1024.36(d) (2).

200.    Thereafter, Fay took no action to correct any of the distinct errors identified in NOE No. 3.

201.    By letter dated February 28, 2019, Garrigus directed correspondence captioned "Request for Information Pursuant to Section 1024.36 of Regulation X" ("RFI No. 3") in hopes of obtaining documents necessary to ascertain the cause of her alleged default.

202.    A true and accurate copy of RFI No. 3 is attached hereto as "Exhibit U".

203.    Fay received RFI No. 3 on March 5, 2019, at the address it designated for receipt of such notices, as evidence by USPS Certified Mail Tracking No. 70172620000078863850.

204.    Fay did not acknowledge receipt of RFI No. 3 within five (5) business days as it was required.

205.    Although requested in RFI No. 3, Fay did not provide Garrigus with a copy of, or print out of, all credit reporting data and/or e-Oscar AUD's provided to or received from any credit reporting agency with regard to the loan, with thirty (30) business days.

206.    To date, Fay has not provided Garrigus with a copy of, or print out of, all credit reporting data and/or e-Oscar AUD's provided to or received from any credit reporting agency with regard to the Loan.

207.    To date, Fay has not provided Garrigus with an explanation for its failure to provide the credit reporting data described above.

208.    Fay's failure to provide all of the documents requested in RFI No. 1, RFI No. 2, and RFI No. 3, has caused Garrigus an informational injury and forced her to expend addition time and resources trying to obtain documents and information necessary to identifying the source of the problems with the Loan.

209.    On March 7, 2019, Garrigus directed correspondence titled "Fourth Notice of Errors under 12 C.F.R. §1024.35(b) (11)" ("NOE No. 4") notifying Fay of its failure to acknowledge receipt of NOE No. 2 or NOE No. 3 within five (5) business days as required by 12 C.F.R. § 1024.35(d), two separate and distinct errors as set forth in 12 C.F.R. 1024.35(b) (11).

210.    In the event it were to determine no error had occurred, NOE No. 4 also requested that Fay provide all documents relied upon in reaching that determination as required by Reg. X, 12 C.F.R. §§ 1024.35(e)(1).

211.    A true and accurate copy of NOE No. 4 is attached hereto as "Exhibit V".

212.    By and through NOE No. 1, NOE No. 2, NOE No. 3, and NOE No. 4, and her communications with Fay representatives, Garrigus brought errors to Fay's attention and requested that the errors be investigated and corrected.

213.    Fay received NOE No. 4, at the address it designated for receipt of such notices, on March 25, 2019, as evidenced by USPS Certified Mail Tracking No. 70172620000078864239.

214.    Fay did not acknowledge receipt of NOE No. 4 within five business days as required by 12 C.F.R. 1024.36(d) (2).

215.    Fay took no action to correct any of the distinct errors identified in NOE No. 4 during the thirty (30) business after March 25, 2019.

216.    By letter dated March 12, 2019, Garrigus directed correspondence to Fay captioned "Request for Information Pursuant to Section 1024.36 of Regulation X" ("RFI No. 4").

217.    A true and accurate copy of RFI No. 4 is attached hereto as "Exhibit W".

218.    Fay received RFI No. 4 on March 14, 2019, at the address it designated for receipt of such notices, as evidence by USPS Certified Mail Tracking No. 70172620000078864123.

219.    Fay did not respond to RFI No. 4 until April 23, 2019.

220.    Fay did not respond RFI No. 4 within thirty (30) business days.

221.    Specifically, if Garrigus had been provided all of the documents she requested and was legally entitled to receive, she would have been better able to respond to the delinquency and default alleged by Fay and provided a an even more detailed description of the errors it seemingly could not identify on its own.

222.    On March 20, 2019, Garrigus directed correspondence titled "Fifth Notice of Errors under 12 C.F.R. §1024.35(b)(11)" ("NOE No. 5") notifying Fay of errors including: (i) making the first filing required by applicable law for a judicial foreclosure in violation of the loss mitigation procedures of §1024.41, a defined error as set forth in 12 C.F.R. 1024.35(b)(9) and/or 12 C.F.R. 1024.35(b)(11); (ii) failing to accept a payment that conforms to the servicer's written requirements for the borrower to make, i.e., Fay's rejection of Garrigus' March 2019 and April 2019 monthly installment payment, two (2) defined errors as set forth in 12 C.F.R. § 1024.35(b)(1) and/or 12 C.F.R. 1024.35(b)(11); and (iii) failing to pay property taxes in a timely manner so to avoid fees and penalties as required by the escrow provisions of 1024.34(a), no less than three (3) defined errors as set forth in 12 C.F.R. § 1024.35(b)(4).

223.    NOE No. 5 included documents evidencing the fees and penalties paid as a result of Garrigus property taxes not being paid in a timely manner.

224.    In the event it were to determine no error had occurred, NOE No. 5 also requested that Fay provide all documents relied upon in reaching that determination as required by Reg. X, 12 C.F.R. §§ 1024.35(e)(1).

225.    A true and accurate copy of NOE No. 5 is attached hereto as "Exhibit X".

226.    By and through NOE No. 1, NOE No. 2, NOE No. 3, NOE No. 4, and NOE No. 5, Garrigus brought errors to Fay's attention and requested that the errors be investigated and corrected.

227.    Fay received NOE No. 5, at the address it designated for receipt of such notices, on March 25, 2019, as evidenced by USPS Certified Mail Tracking No. 70172620000078864239.

228.    Fay did not acknowledge receipt of NOE No. 5 within five business days as required by 12 C.F.R. 1024.36(d) (2).

229.    Fay did not take any action to correct he distinct errors identified in NOE No. 5 in the thirty (30) business days after March 25, 2019.

230.    In a letter dated April 2, 2019, after the filing of the Foreclosure Case, Fay again acknowledged receipt of Garrigus correspondence dated February 14, 2019 (NOE No. 1) and stated: "The delay in providing this information to you is because more time is needed to complete the request. We are continuing to gather the requested information and will respond back to you in writing within 45 business days from the date of receipt of your correspondence."

231.    A true and accurate copy of the letter dated April 2, 2019 and referenced above is attached hereto as "Exhibit Y."

232.    In essence, the letter dated April 2, 2019 sought a fifteen (15) business day extension to respond to NOE No. 1 as described in 12 C.F.R. § 1024.35 (e)(3)(ii).  However, a fifteen (15) business day extension pursuant to 12 C.F.R. § 1024.35 (e) (3) (ii) requires the servicer to notify the borrower of the extension and the reason for the extension within "30 days (excluding public holidays, Saturdays, and Sundays) after the servicer receives the notice of error" at issue.

233.     Thus, as Fay received NOE No. 1 on February 19, 2019, the letter dated April 2, 2019 did not notify Garrigus of the sought after fifteen (15) day extension within the requisite time period.

234.     The letter dated April 2, 2019 also did not provide a sufficient explanation for why the extension was being sought.

235.     Also on April 2, 2019, Fay mailed an *undated* copy of the letter dated April 2, 2019 and referenced above.

236.     A true and accurate of the *undated* letter mailed on April 2, 2019 is attached hereto as "Exhibit Z."

237.     By information and belief, the undated letter mailed on April 2, 2019 was issued because Fay knew or believed its request and notice of a fifteen (15) day extension was untimely.

238.     All other written correspondence Fay has directed to Garrigus includes a date.

239.     On April 12, 2019, Garrigus directed correspondence to Fay titled "Sixth Notice of Errors under 12 C.F.R. §1024.35(b) (11)" ("NOE No. 6") identifying the same errors set forth in NOE No. 5.

240.     A true and accurate copy of NOE No. 6 is attached hereto as "Exhibit AA".

241.     In the event it determined no error had occurred, NOE No. 6 also requested  Fay provide all documents relied upon in reaching that determination pursuant to Reg. X, 12 C.F.R. § 1024.35(e)(1).

242.     Fay received NOE No. 6 on April 16, 2019, at the address it designated for receipt of such notices, as evidenced by USPS Certified Mail Tracking No. 70172620000078864413.

243.     Fay did not acknowledge receipt of NOE No. 6 within five business days as required by 12 C.F.R. 1024.36(d) (2).

244.    In correspondence dated April 23, 2019, Fay responded to Garrigus' letters dated "February 14, 2019 [NOE No. 1], February 15, 2019 [RFI No. 2], February 20, 2019 [NOE No. 2], February 21, 2019 [NOE No. 3], February 28, 2019 [RFI No. 3], March 12, 2019 [RFI No. 4], and March 20, 2019 [NOE No. 5]" by acknowledging several errors and stating: (i) "The prior servicer's records showed the borrower's account was due for September 1, 2017 monthly mortgage payment, and all subsequent payments."; (ii) "Fay is unable to determine how the prior servicer, Land Home Financial Services, determined the loan was due for August 2018." (iii) "Due to the error, the account is showing delinquent; therefore until correction is made Fay is unable to accept any payments."; (iv) "Fay received the February 14, 2019…Notice of Error/Request for Information on February 20, 2019, the letter acknowledging receipt was sent on February 21, 2019 (copies enclosed)"; (v) "On December 6, 2018, Fay initiated a verbal loss mitigation application." ; (vi) "Please consider this letter our timely response to each of your letters."; and (vii) "Fay also disagrees and find nor error occurred regarding your claims that an escrow analysis was not completed, or that an accurate payoff balance was not provided, or that periodic billing statements were not sent to the borrower."

245.    A true and accurate copy of Fay's correspondence dated April 23, 2019 is attached hereto as "Exhibit BB."

246.    Pursuant to CFR 1024.35(e)(1)(i)(A), in situations wherein it identifies an error or errors, a servicer must respond by, "[c]orrecting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance;"

247.    Within its correspondence dated April 23, 2019, a response to NOE No.1, NOE No. 2, NOE No. 3, and NOE No. 5, Fay identified and acknowledged servicing errors relative to

the manner in which payments had been applied to the Loan, the alleged delinquency status of

the Loan, its rejection of payments from Garrigus, the management of the Loan's escrow

account, and the assessment of fees to the Loan.

248.    Within its correspondence dated April 23, 2019, a response to NOE No. 1, NOE

No. 2, NOE No. 3, and NOE No. 5, Fay acknowledged it had yet to correct any errors.

249.    As of May 13, 2019, Fay had not provided Garrigus with confirmation that any of

the identified errors had been corrected.

250.    As of May 13, 2019, Fay had not corrected any errors.

251.    To date, Fay still has not: (i) begun accepting Garrigus' monthly payments; (ii)

refunded the escrow surplus described above; or (iii) acknowledged the Foreclosure Case was

sough it in error.

252.    In addition, the quotations contained in subparts (i) and (ii) above are

contradictory. *See Guccione v. JPMorgan Chase Bank*, 2015 WL 1968114 (N.D. Cal. May 1,

2015)(servicer's response that there was no error with escrow account contradicted by three

documents sent to the borrower each stating that a different escrow amount was owed.); *see,*

*also, Wilson v. Bank of Am.*, 48 F. Supp. 3d 787 (E.D. Pa. 2014)(Plaintiff sufficiently alleged that

servicer did not conduct a reasonable investigation of her notices of error where the servicer sent

her response with contradictory explanations for why the actions she requested were not taken).

253.    The quotation contained in subpart (iii) above is also contradictory, and

nonsensical. If Fay recognized an error occurred causing the Loan to errantly reflect

delinquency, it would have begun accepting payments immediately.

254.    The quotation contained in subpart (vii) above is contradictory and nonsensical. If

an escrow analysis had been completed, Garrigus' escrow account would not contain a balance

in excess of $9,884.61 nor would Fay have continued to apply portions of Garrigus' monthly payments to escrow.

255.    The quotation contained in subpart (vii) above is contradictory and nonsensical because if Fay recognized an error in the manner payments have or had been applied to the Loan, the payoff statement had to have been inaccurate.

256.    Contrary to the quotation contained in subpart (iv) above, Fay received Garrigus' correspondence dated February 14, 2019 (NOE NO. 1) on February 19, 2019 not February 20, 2019.

257.    Contrary to the quotation contained in subpart (vi) above, Fay's correspondence dated April 23, 2019 was not timely nor did Fay provide an acknowledgment letter dated February 21, 2019.

258.    If Fay had determined the account *was not* delinquent, it should have refunded the surplus escrow funds and provided a letter confirming that it would henceforth accept Garrigus' payments.

259.    The rest of Fay's' response to NOE No.1, NOE No. 2, NOE No. 3, and NOE No. 5 was largely a template containing boilerplate language not responsive to the specific notices of error.  *See Lage v. Fay Loan Servicing, LLC.,* 2015 WL 7294854, at *13 (S.D. Fla. Nov. 19, 2015) ("The sending of a template or form letter which fails to substantively address concerns raised by the borrower's inquiry does not satisfy the servicer's obligations under Regulation X's error resolution procedures").

260.    To date, Fay has not provided any documents or information it relied upon in reaching its determination that no error occurred with regard to its alleged failure to: (i) provide

loss mitigation options to Garrigus; (ii) perform an escrow analysis; and (iii) provide an accurate

payoff statement, as required by Reg. X, 12 C.F.R. § 1024.36(e)(4).

261.    To date, Fay has failed to: (i) provide a *complete* Life of Loan History as

requested in RFI No. 1 on January 25, 2019; (ii) provide confirmation that any of the errors it

acknowledged on April 23, 2019 have been corrected; (iii) provide documentation relative to its

finding that some errors did not occur; (iv) provide a response to NOE No. 4; (v) reasonably

investigate or correct the errors identified in NOE No. 1, NOE No. 2, NOE No. 3, NOE No. 4,

NOE No. 5, or NOE No. 6; (vi) provide information pertaining to all credit reporting data and/or

e-Oscar AUD's provided to or received from any credit reporting agency with regard to the loan

identified herein including but not limited to the Global Events Management (GEM) screen shot

from MSP as requested in RFI No. 3 on February 28, 2 019.

262.    Any reasonable investigation into the errors alleged by and through NOE No. 1,

NOE No. 2, NOE No. 3, NOE No. 4, NOE No. 5, or NOE No. 6 would have uncovered the

errors alleged therein *and* resulted in some action being taken to address them.

263.    Each failure further exacerbated the emotional distress caused to Garrigus by Fay.

264.    By failing to acknowledge or provide information requested by Garrigus, failing

to adequately investigate her notices of errors or take action to address them, and refusing to stop

its unlawful collection attempts, Fay has and continues to violate 12 C.F.R. § 1024.35(e).

<u>Foreclosure Case and Continued Attempts to Have Errors Corrected</u>

265.    After improperly refusing to accept and apply payments as required by law, and

despite Garrigus notifying Fay of a multitude of servicing errors on February 14, 2019 (NOE No.

1) and February 21, 2019 (NOE No. 2) as described above, Fay and/or U.S. Bank accelerated the

Loan and retained Codilis to initiate a foreclosure action.

266.    On March 6, 2019, Codicil filed a foreclosure case in the Marion County Superior

Court – Civil Division 12 (Cause No. 49D12-1903-MF-009167) (the "Foreclosure Case").

267.    A true and correct copy of the *Complaint for Foreclosure* in the Foreclosure Case

is attached hereto as "Exhibit CC."

268.    The Foreclosure Case was filed even though Garrigus' mortgage account was

less than 120 days delinquent, a violation of Regulation X, 12 C.F.R. § 1024.41(f)(1).

269.    In the Foreclosure Case, Codicil alleged the Loan was in default and that Garrigus

owed a principal balance of $64,062.99, a deferred principal balance of $17,446.08, interest from

August 1, 2017 to March 6, 2019 of $2,046.51, plus additional attorney fees, costs, and charges.

270.    On March 21, 2019, Garrigus filed an Unnapposed Motion for Automatic

Enlargement of Time to Respond to Plaintiff's Complaint.

271.    On April 5, 2019, Codicil moved to dismiss the Foreclosure Case without

prejudice.

272.    On April 16, 2019, the Foreclosure Case was dismissed without prejudice.

<u>Impact On, And Damage To, Garrigus</u>

273.    Due to the actions of Fay, before and after receipt of actual notice on numerous

occasions, Garrigus remains in a false and worsening "default" status, continues to receive false

and harassing communications, and is still suffering from a wrongfully suppressed FICO score.

She cannot obtain credit at rates relative to her real credit risk and cannot refinance her home.

274.    Fay's unlawful and wrongful acts and omissions have caused Garrigus to suffer

emotionally, financially, and even physically.  She has experienced loss of sleep, anxiety, fear,

and frustration over Fay's refusal to correct the problems described herein, the Foreclosure Case,

and the possibility of another foreclosure action.  *See Johnston v. Bank of America*, NA., 173 F.

Supp. 2d 809 (N.D. Ill. 2001) (possibility of wrongful foreclosure sufficient to state emotional

distress damages); *see, also*, *Parks v. Wells Fargo Home Mortgage, Inc.*, 398 F.3d 937, 941 (7th

Cir. 2005) ("We have no doubt that anyone would suffer emotional harm from losing his or her

home, or even from facing such a possibility").

275.    The aforementioned emotional distress was magnified by the events described

herein having occurred over such an extended period of time, and with such repetition, despite

Garrigus' earnest attempts to have the errors and omissions addressed and following what she

believed was to be a fresh start following the successful completion of her Ch. 13 bankruptcy

proceedings.

276.    Furthermore, Fay's refusal to correct the problems described herein, or cease its

collection efforts, after receipt of actual notice of its errant conduct on numerous occasions,

caused Garrigus to incur additional actual damage in the form of time away from work, travel

expenses, loss of time while on the phone with Fay representatives, and costs associated with the

investigation and preparation of Notices of Errors, follow-up Requests for Information, and other

dispute letters.

277.    In addition, because of the false "default" status on the Loan, Fay has imposed

and continues to impose unwarranted fees.   Eventually, if left unaddressed or opposed the

combination could very likely snowball into another foreclosure proceeding.  This further

exacerbates the emotional distress Fay has forced upon Garrigus.

278.    In addition, by wrongfully filing the Foreclosure Case, Fay, Codilis, and U.S.

Bank, have created an adverse public record – a scarlet letter if you will – that can never be

removed. For the rest of her life, Garrigus must endure that record and engage in painful and

embarrassing discussions and explanations as to why that record exists.

<u>Fay's Pattern & Practice of Illegal Conduct</u>

279.    Fay has engaged in a pattern and practice of mistreating mortgage loan borrowers and violating provisions of RESPA and Regulation X.

280.    Herein, that pattern and practice entails dozens of servicing errors, abusive and unjustified collection practices, and a continued refusal to correct the servicing errors.

281.    In addition, in the last year alone, Fay has had at least 283 consumer complaints lodged against it nationally, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan modification, collection, foreclosure" related to mortgage products. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database, which can be located at the following: http://www.consumerfinance.gov/complaintdatabase/.

<u>Land Home's Pattern & Practice of Illegal Conduct</u>

282.    Land Home has engaged in a pattern and practice of mistreating mortgage loan borrowers and violating provisions of RESPA and Regulation X.

283.    Herein, that pattern and practice entails dozens of servicing errors, abusive and unjustified collection practices, and a continued refusal to correct the servicing errors.

284.    In addition, in the last year alone, Land Home has had at least 78 consumer complaints lodged against it nationally, specifically concerning issues of mortgage servicing. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database, which can be located at the following: http://www.consumerfinance.gov/complaintdatabase/.

## COUNT I: Breach of Contract
### (Against U.S. Bank)

285.    Garrigus incorporates by reference and restates as though fully set forth herein all previous allegations of the Complaint.

286.    The Loan is an enforceable contract between Garrigus and U.S. Bank, and Fay as the servicer of the loan acted as the agent of U.S. Bank.

287.    A true and accurate copy of the Note and Mortgage are attached hereto as "Exhibit DD".

288.    U.S. Bank, by its own acts and omissions and by the acts and omissions of its agent, Fay, is in material breach of the Loan in the following respects: (i) Failure to accept Garrigus' mortgage payments due to a manufactured state of default; (ii) failure to credit and apply Garrigus' payments as contractually obligated; (iii) assessment of unauthorized and unreasonable late fees, legal fees, costs, and property inspection fees; (iv) placing the loan in default and inaccurately reporting the same to credit reporting agencies; and (v) their general failure to conduct their affairs in good faith.

289.    Garrigus has fully performed her obligations pursuant to the Loan.

290.    Garrigus has not excused or waived U.S. Bank's obligations to perform pursuant to the Loan.

291.    U.S. Bank, by its own acts and omissions and by the acts and omissions of its agent, Fay, has failed to exercise due care in the servicing of the Loan and owed Garrigus a duty to handle escrow properly, to adjust payments to recover escrow shortage and to provide her notice of any such surplus.  U.S. Bank, by its own acts and omissions and by the acts and omissions of its agent, Fay, breached that duty to Garrigus and acted in an oppressive and

abusive manner by declining to apply Garrigus' tender of payments unfairly, in bad faith and without reason and by otherwise misapplying those payments.

292.    U.S. Bank's acts and omissions have caused Garrigus concrete actual damage and injury as set forth the preceding allegations.

**COUNT II: Violations of the RESPA**
**(Against Land Home)**

293.    Garrigus incorporates by reference and restates as though fully set forth herein all previous allegations of the Complaint.

294.    By its acts and omissions, Land Home has numerous times and in numerous different ways violated the RESPA with respect to the Loan, including, but in no way limited to, those of which it was notified, each time it did any of the following:  (i) failed to apply payments as contractually obligated as set forth in 12 C.F.R. § 1024.35(b)(1); (ii) failed to perform an escrow analysis in violation of 12 C.F.R. § 1024.17(c) and 12 U.S.C. § 2609(a); (iii) imposed improper and unreasonable fees as set forth in 12 C.F.R. § 1024.35(B)(5); (iv) failed to adequately investigate or respond to  NOE No. 1, or correct errors in violation of 12 C.F.R. § 1024.35(e); (v) failed to adequately respond to RFI No. 1; (vii) failed to acknowledge receipt of NOE No. 1 within five business days as required by 12 C.F.R. § 1024.36(d)(2); (vii) failed to promptly credit payments made by Garrigus (during and after bankruptcy), instead placing them in suspense for extended periods of time, in violation of Reg. Z, 12 C.F.R. § 1026.36(c)(1) and/or 15 U.S.C. § 1639f; (viii) failed to send Interest Rate and/or Payment Change Notices in violation of Reg. Z, 12 C.F.R. 1026.20(c) & (d); and (iv) generally mismanaged Garrigus' escrow account.

295.    12 C.F.R. § 1024.35(a) provides that a "servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and

that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred."

296.    Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. §1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower."

297.    12 C.F.R. § 1024.35(e)(1) provides that a servicer must respond to a notice of error by either "[c]orrecting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance" or "[c]onducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance."

298.    Land Home failed to correct specifically detailed errors or conduct a reasonable investigation.

299.    NOE No. 1 met the requirements of a notice of error as defined by 12 C.F.R. § 1024.35(a).

300.    Garrigus has alleged by and through NOE No. 1 that Land Home has committed numerous distinct errors pursuant to 12 C.F.R. §1024.35(b)(2) by failing to provide all of the information and/or documentation requested by and through the Requests for Information submitted and its failure to investigate or correct the multiple servicing errors raised.

301.    Fay's actions are a pattern and practice of behavior in conscious disregard for the rule of law and Garrigus' rights.

### COUNT III: Violations of the RESPA
### (Against Fay)

302.    Garrigus incorporates by reference and restates as though fully set forth herein all previous allegations of the Complaint.

303.    By its acts and omissions, Fay has numerous times and in numerous different ways violated the RESPA with respect to the Loan, including, but in no way limited to, those of which it was notified, each time it did any of the following:  (i) failed to apply payments as contractually obligated as set forth in 12 C.F.R. § 1024.35(b)(1); (ii) failed to provide a payoff statement within seven business days as required by 12 C.F.R. 1024.36(d)(2); (iii) failed to provide an accurate payoff statement as required by 1026.36(c) of Reg. Z and 12 C.F.R. 1024.35(b)(6); (iv) failed to perform an escrow analysis in violation of 12 C.F.R. § 1024.17(c) and 12 U.S.C. § 2609(a); (v) imposed improper and unreasonable fees as set forth in 12 C.F.R. § 1024.35(B)(5); (vi) failed to adequately investigate or respond to  NOE No. 1, or correct errors in violation of 12 C.F.R. § 1024.35(e); (vii) failed to adequately respond to RFI No. 1; (viii) failed to acknowledge receipt of NOE No. 1 within five business days as required by 12 C.F.R. § 1024.36(d)(2); (ix) failed to promptly credit payments made by Garrigus (during and after bankruptcy), instead placing them in suspense for extended periods of time, in violation of Reg. Z, 12 C.F.R. § 1026.36(c)(1) and/or 15 U.S.C. § 1639f; (x) failed to send Interest Rate and/or Payment Change Notices in violation of Reg. Z, 12 C.F.R. 1026.20(c) & (d); (xi) failed to acknowledge receipt of NOE No. 2 within five business days as required by 12 C.F.R. § 1024.36(d)(2); (xii) increased Garrigus' principal balance; (xiii)  failed to appropriately

investigate the errors identified in NOE No. 1 and NOE No. 2; and (xiv) mismanaged Garrigus' escrow account.

304.    12 C.F.R. § 1024.35(a) provides that a "servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred."

305.    Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. §1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower."

306.    12 C.F.R. § 1024.35(e)(1) provides that a servicer must respond to a notice of error by either "[c]orrecting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance" or "[c]onducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance."

307.    Fay failed to correct specifically detailed errors or conduct a reasonable investigation.

308.    NOE No. 1, NOE No. 2, NOE No. 3, NOE No. 4, NOE No. 5, and NOE No. 6 each meet the requirements of a notice of error as defined by 12 C.F.R. § 1024.35(a).

309.    Garrigus has alleged by and through NOE No. 1, NOE No. 2, NOE No. 3, NOE No. 4, NOE No. 5, and NOE No. 6 that Fay has committed in numerous distinct errors pursuant to 12 C.F.R. §1024.35(b) (2) by failing to provide all of the information and/or documentation requested by and through the Requests for Information submitted and its failure to investigate or correct the multiple servicing errors raised.

310.    Fay's actions are a pattern and practice of behavior in conscious disregard for the rule of law and Garrigus' rights.

## COUNT IV: Violation of the FDCPA, 15 U.S.C. §1692k
### (Against Fay)

311.    Garrigus incorporates by reference and restates as though fully set forth herein all previous allegations of the Complaint.

312.    Garrigus is a "consumer" as defined by 15 U.S.C. § 1692a (3).

313.    Fay took the actions described above in an attempt to collect a debt represented by the Loan.

314.    Fay violated 15 U.S.C. §1692(e) (2) when they repeatedly misrepresented the character, amount, or legal status of the Loan.  Fay misrepresented to Garrigus that he was in default on the Loan and that he was obligated to maintain an escrow account for the Loan in an incorrect amount that Fay knew or had reason to know was in contravention of the terms of the Loan.

315.    Fay violated 15 U.S.C. §1692(e)(5) by threatening to take an action – commence foreclosure proceedings against Garrigus – that cannot legally be taken as Garrigus has fully satisfied any and all obligations under the terms of the Loan.

316.     Fay violated 15 U.S.C. §1692(e) (10) when they used false representations, through false Loan statements that the Loan was past-due and in default and deceptive means to attempt to collect the Loan.

317.     Fay violated 15 U.S.C. §1692f(1) by attempting to collect and collecting amounts (including interest, fees, charges, or expenses incidental to the principal obligation) that were not expressly authorized by the Loan or permitted by law via the Bankruptcy Case or Chapter 13 Discharge by (I) misrepresenting the status of the debt; (ii) attempting to collect fees and costs for which notice was not provided in the Bankruptcy Case; (iii) declaring the loan in delinquent or default status; (v) threatening foreclosure; (vi) assessing improper fees; (vii) assessing improper corporate advances in restatement letters and payoff letters; and (viii) reporting false information by reporting the loan delinquent to the credit bureaus.

318.     Fay violated 15 U.S.C. §1692(d) by employing an unfair and unconscionable means to collect the subject debt including but not limited to its harassing calls and letters.

319.     Garrigus has been harmed by, and continues to suffer from harm resulting from, the unfair and deceptive practices of Fay in wrongfully breaching the Loan and in making misrepresentations to further effectuate their wrongdoing.

**COUNT V: Violation of the FDCPA, 15 U.S.C. §1692k**
**(Against Codilis)**

320.     Garrigus incorporates by reference and restates as though fully set forth herein all previous allegations of the First Amended Complaint.

321.     Codilis is a debt collector.

322.     Garrigus is a consumer as define above.

323.     The Loan is a consumer debt within the meaning of the FDCPA because it was incurred for household purposes – the purchase of the Home.

44

324.    The Loan was in "default" at the time Codilis attempted to collect the debt by means of the Foreclosure Case and its various foreclosure related correspondence.

325.    Codilis violated 15 U.S.C. § 1692(e)(2) when it misrepresented the character, amount, or legal status of the Loan. Codilis represented to Garrigus that she was in default, that she owed sums which were not in fact due, and initiated foreclosure proceedings when foreclosure proceedings should not have even been initiated.

326.    The correspondence sent to Garrigus from Codilis was false and deceptive.

327.    Codilis knew or had reason to know that the sums claimed by Fay and U.S. Bank were not in fact due, that the Loan was not in default, that payments had been properly and timely made, that Fay had repeatedly misapplied payments, and that the  Foreclosure Case had been improperly filed.

328.    Codilis violated 15 U.S.C. § 1692(e)(5) when it threatened to take an action and did take action – the collection of amounts not due and the foreclosure of the home – it legally could not take.

329.    Codilis violated 15 U.S.C. § 1692(f) as its conduct as outline herein constitutes an unconscionable means to collect or to attempt to collect a debt.

### COUNTS VI: Violation of the Discharge Injunction - 11 U.S.C. § 524(i),
### (Against Fay)

330.    Garrigus incorporates by reference and restates as though fully set forth herein all previous allegations of the Complaint.

331.    As evidence by the Life of Loan History, and despite its attestations to the contrary, Fay seeks to collect upon charges, or other amounts existing previous to discharge.

332.    Where, as here, a debtor performs under a confirmed Chapter 13 Plan and makes all required post-petition payments, said debtor must be current – unless there has been a misapplication of payments or other error committed by the secured creditor.

333.    Garrigus fully performed under her confirmed Chapter 13 Plan and made all post-petition payments as required.

334.    Despite Garrigus having fulfilled all obligations of the Bankruptcy Case, Fay has collected, and continues to seek to collect upon, alleged debt obligations predating and in contravention of the *Order of Discharge*.

335.    Any amounts Fay claims or has claimed to be due are the result of its failure to apply payments as contractually and legally obligated, or Land Home's failure to provide notice to the Trustee during the Bankruptcy Case as required by Fed. R. Bankr. P. Rule 3002.1(g).

336.    Fay's actions are a willful and ongoing attempt to collect a discharged debt and otherwise frustrate the purpose of the *Order of Discharge*.

337.    Fay's conduct constitutes a gross violation of the discharge injunction as it had actual knowledge that Garrigus was previously involved in bankruptcy, was to be deemed contractually current, that certain fees were disallowed, and thereafter protected from any direct or indirect collection actions for discharged debts.  *See Ridley v. M & T Bank (In re Ridley)*, 572 B.R. 352 (Bankr. E.D. Okla. 2017).

338.    Fay's actions were willful and caused Garrigus concrete injury as set forth above, rendering it liable for punitive damages.  This Court has authority to enter sanctions for such conduct. *See, e.g. Romanucci & Blandin, LLC. v. Lempesis*, 2017 WL 4402643, at 6-7 (N.D. Ill. May 4, 2017); *see, also,* 3 William L. Norton Jr. & William L. Norton III, Norton Bankruptcy Law and Practice § 58:2 (3d ed. 2017) ("A majority of courts also allow punitive damages in appropriate

cases for a violation of the discharge injunction although, unlike the statue governing violations of the automatic stay, punitive damages are not specifically mentioned in Code § 524.6").

339.    Garrigus alleges that in order to carry out this provision of the Bankruptcy Code and maintain its integrity, vital to the protection of Chapter 13 debtors who have paid as required, this Court must permit a punitive damage instruction and impose other sanctions against Fay for its willful, blatant, and continued disregard for the rule of law and the authority of the United States Bankruptcy Court.

## COUNTS VII & VIII: Violation of the Automatic Stay & Fed. R. Bankr. P. Rule 3002.1(G)
### (Against Land Home)

340.    Garrigus incorporates by reference and restates as though fully set forth herein all previous allegations of the Complaint.

341.    As evidence by the Life of Loan History, and despite its attestations to the contrary, Land Home has collected upon charges or other amounts not included within its Proof of Claim or subjection to a Notice of Fees as required by Fed. R. Bank. P. Rule 3002.

342.    Where, as here, a debtor performs under a confirmed Chapter 13 Plan and makes all required post-petition payments, said debtor must be current – unless there has been a misapplication of payments or other error committed by the secured creditor.

343.    Garrigus fully performed under her confirmed Chapter 13 Plan and made all post-petition payments as required.

344.    Despite Garrigus having fulfilled all obligations of the Bankruptcy Case, Fay has collected, and continues to seek to collect upon, alleged debt obligations predating and in contravention of the *Order of Discharge*.

345.    Any alleged escrow deficiency, fees, or amounts claimed to be due, is the result of

Fay's own failure to perform an annual escrow analysis, apply payments as contractually and legally obligated, or provide notice to the Trustee during the Bankruptcy Case as required by Fed. R. Bankr. P. Rule 3002.1(g).

346.     Garrigus alleges that in order to carry out this provision of the Bankruptcy Code and maintain its integrity, vital to the protection of Chapter 13 debtors who have paid as required, this Court must permit a punitive damage instruction and impose other sanctions against Fay for its willful, blatant, and continued disregard for the rule of law and the authority of the United States Bankruptcy Court.

### COUNT IX: Violation of the Truth In Lending Act, 15 U.S.C. §1601, *et seq* (Against U.S. Bank)

347.     Garrigus incorporates by reference and restates as though fully set forth herein all previous allegations of the Complaint.

348.     Garrigus asserts a private right of action under 15 U.S.C. § 1640(a) for: i) U.S. Bank's breach of its duty to send interest rate and payment change notices pursuant to 15 U.S.C. § 1638a  and Reg. Z, 12 C.F.R. § 1026.20(c) and (d); and ii) U.S. Bank's breach of its duty to promptly credit payments pursuant to 15 U.S.C. § 1639f and Reg. Z, 12 C.F.R. § 1026.36(c) (1).

Failure to Promptly Credit Payments

349.     15 U.S.C. § 1639f (a) provides that, "[i]n connection with a consumer credit transaction secured by a consumer's principal dwelling, no servicer shall fail to credit a payment to the consumer's loan account as of the date of receipt, except when a delay in crediting does not result in any charge to the consumer."

350.     Fay, acting on behalf of U.S. Bank, has failed to credit payments (made directly and via disbursements made by the Trustee) to the Loan as of the date of receipt and the its delay in crediting those payments has resulted in charges to Garrigus.

351.    12 C.F.R. §1026.36(c)(1)(ii) provides that if a servicer retains a partial payment in a suspense or unapplied funds account (rather than credits or returns it), then the servicer must (1) disclose on the periodic statement the total amount retained in such suspense or unapplied funds account and (2) when sufficient funds accumulate to cover a full payment, promptly credit the retained funds to the oldest outstanding payment

352.    Fay, acting on behalf of U.S. Bank, has failed to properly disclose amounts held in suspense or, when sufficient funds accumulated to cover one of her full payments, promptly credit the retained funds to the oldest outstanding payment.

353.    The Loan was deemed current by an order of the bankruptcy court in her prior bankruptcy case, Garrigus has made every payment after that, yet Fay has refused to acknowledge that her loan is current or appropriately apply her payments. "[Garrigus has] also alleged that the amounts that [Fay] told her would cure her 'defaults' ranged from [$10,413.16] in January of [2019] to [$18,220.88] as of March of [2019]." *In re Cawood*, 577 B.R. 538 (Bankr. E.D. Tenn., Sept. 29, 2017).

<u>Failure to Send Payment Change and Interest Rate Notices</u>

354.    15 U.S.C.A. § 1638b states, "During the 1-month period that ends 6 months before the date on which the interest rate in effect during the introductory period of a hybrid adjustable rate mortgage adjusts or resets to a variable interest rate or, in the case of such an adjustment or resetting that occurs within the first 6 months after consummation of such loan, at consummation, the creditor or servicer of such loan shall provide a written notice, separate and distinct from all other correspondence to the consumer, that includes the following: (1) Any index or formula used in making adjustments to or resetting the interest rate and a source of information about the index or formula; (2) an explanation of how the new interest rate and

payment would be determined, including an explanation of how the index was adjusted, such as by the addition of a margin; (3) a good faith estimate, based on accepted industry standards, of the creditor or servicer of the amount of the monthly payment that will apply after the date of the adjustment or reset, and the assumptions on which this estimate is based; (4) a list of alternatives consumers may pursue before the date of adjustment or reset, and descriptions of the actions consumers must take to pursue these alternatives, including – (A) refinancing, (B) renegotiation of loan terms, (C) payment forbearances, and (D) pre-foreclosure sales; (5) the names, addresses, telephone numbers, and Internet addresses of counseling agencies or programs reasonably available to the consumer that have been certified or approved and made publicly available by the Secretary of Housing and Urban Development or a State housing finance authority (as defined in section 1441a-1 of Title 12); and (6) the address, telephone number, and Internet address for the State housing finance authority (as so defined) for the State in which the consumer resides.

355.    12 C.F.R. § 1026.20(c) requires that a creditor, assignee, or servicer of an adjustable-rate mortgage shall provide consumers with disclosures, as described in this paragraph (c), in connection with the adjustment of interest rates pursuant to the loan contract that results in a corresponding adjustment to the payment.

356.    Section 1026.20(c)(1)(i) defines an adjustable rate mortgage as, "a closed-end consumer credit transaction secured by the consumer's principal dwelling in which the annual percentage rate may increase after consummation."

357.    The Home is Garrigus' principal dwelling.

358.    The Loan is an adjustable rate mortgage.

359.    U.S. Bank, via its agent Fay, failed to provide Garrigus with notice before making

changes to the principal and interest portions of her monthly payment obligations as further
described herein.

360.     U.S. Bank's actions are a pattern and practice in conscious disregard of the rule of
law and Garrigus' rights as a borrower.

361.     U.S. Bank's failure to provide notice caused Garrigus emotional distress,
including but not limited to confusion, an informational injury, and deprived her of the benefit of
portions of her monthly payments applied to escrow instead of principal and interest.

### COUNT X: Declaratory Relief – 28 U.S.C. § 2201(a)
### (Against U.S. Bank and Fay)

362.     Garrigus incorporates by reference and restates as though fully set forth herein all
previous allegations of the Complaint.

363.     By operation of law, the Mortgage no longer constitutes a valid, enforceable lien
on the Home and the Note is uncollectible.

364.     Garrigus is in possession of the Home and has valid title to the Property.

365.     Garrigus' title to the Home is superior to all other claims and liens asserted by or
on behalf of the Defendants due to the broken chain of title set forth herein.

366.     Without any legally cognizable interest in favor of U.S. Bank, Garrigus is not in a
position nor legally bound to continue remitting payments to Fay, U.S. Bank, or any other
alleged party in interest for a debt that is alleged to be due and owing under the Note until the
original is produced. Any payments that Garrigus has made, or would make in the future, are
very likely to her continued financial detriment.

367.     Based on the foregoing, Garrigus requests this Court declare that neither Fay nor
U.S. Bank, or any other party in interest have a legally enforceable interest in the Note on the
basis that either U.S. Bank does not have any interest in the Loan as a result of the broken chain

of transfers set forth and described herein or because it cannot produce an original copy of the Note for inspection.

### COUNT XI: Violation of the Ind. Deceptive Consumer Sales Act, I.C. § 14-5-0.5, *et seq* (Against Fay)

368.    Garrigus incorporates by reference and restates as though fully set forth herein all previous allegations of the Complaint.

369.    The Indiana Deceptive Consumer Sales Act ("DCSA") is a consumer protection s statute designed to "protect consumers from suppliers who commit deceptive and unconscionable acts."

370.    Garrigus is a consumer, the Loan and servicing of the Loan is a consumer transaction, and Fay is a supplier as defined by I.C. 24-5-0.5-3(A) (3), I.C. 24-5-0.5-2(a) (1), and I.C. 24-5-0.5-2(a) (1) (A)-(C).

371.    Fay has contractual privity with Garrigus as a partial assignee of the Loan. It has been assigned and has agreed to undertake obligations for servicing the Loan.

372.    Fay has committed willful unfair and deceptive acts, both uncured and incurable, via the conduct alleged herein including but not limited to claiming amounts to be due which were not, by assessing fees and charges improperly, and by declaring a default and initiating the Foreclosure Case when there was not a legitimate basis to do so.

373.     Garrigus provided notice to Fay of its willful unfair and deceptive acts via NOE No. 1, NOE No. 2, NOE No. 3, NOE No. 5, NOE No. 5, and NOE No. 6.

374.    Fay has failed to cure its willful unfair and deceptive acts despite receiving notice, as set forth above.

### COUNT XII: Breach of Fiduciary Duty (Against Fay and U.S. Bank)

375.    Garrigus incorporates by reference and restates as though fully set forth herein all previous allegations of the Complaint.

376.    A fiduciary relationship existed between U.S. Bank and/or Fay and Garrigus with respect to the management of her escrow account.

377.    U.S. Bank and/or Fay owed a fiduciary duty to Garrigus as the holders of a position of trust with regard to the management and maintenance of her escrow account.

378.    U.S. Bank and/or Fay had a duty under the mortgage and as the managers of the escrow account, a form of trust account, to only utilize funds maintained in escrow account for specified and proper purposes as well as to only fund the escrow account as required.

379.    U.S. Bank and/or Fay breached their duty to Garrigus by: (a) using escrow funds to pay unearned fees and costs to their benefit; (b) failing to pay property taxes in a timely manner resulting in the accrual of fees and penalties; (c) debiting amounts from the escrow account without authorization or proper purpose; (d) funding the escrow account with funds above and beyond that which was required to pay property taxes or the permitted 1/6 cushion.

380.    U.S. Bank and/or Fay exploited their position of trust in bad faith to their benefit and to Garrigus' detriment.

## PRAYER FOR RELIEF

WHEREFORE, Garrigus prays for the entry of judgment in her favor and against Defendants for the following:

a.    For an Order of Contempt;

b.    For actual damages, including emotional distress, interest, plus all costs and reasonable attorney fees against Fay for the violations contained in Counts III, IV, VI, XI, and XII;

c.      For actual damages, including emotional distress, interest, plus costs and reasonable attorney fees against Codilis for the violations contained in Count V;

d.      For actual damages, including emotional distress, interest, plus costs and reasonable attorney fees against U.S. Bank for the violations contained in Counts I, IX, and XII;

e.      For actual damages, including emotional distress, interest, plus costs and reasonable attorney fees against Land Home for the violations contained in Count II.

f.      For statutory damages of $2,000.00 against Fay for each and every violation contained in Count III;

g.      For statutory damages of $2,000.00 against Land Home for each and every violation contained in Count IV;

h.      For statutory damages of $1,000.00 against Codilis for the violations contained in Count V;

i.      For statutory damages of $1,000.00 against Fay for the violations contained in Count IV;

j.      For statutory damages of $4,000.00 against U.S. Bank for each and every violation contained in Count IX;

k.      For three (3) times Garrigus' actual damages against Fay (subpart b) for the violations contained in Count XI;

l.      For punitive damages against Fay for the violations set forth in Counts VI and XII;

m.      For punitive damages against U.S. Bank for the violations contained in Count XII;

n.      For punitive damages against Land Home for the violations set forth in Counts VII and VIII;

54

o.      For all other relief deemed just and proper.

## JURY DEMAND

Plaintiff, Terri L. Garrigus, by counsel, hereby respectfully demands a trial by jury on all such claims that may be so tried.

Respectfully submitted,

/s/Travis W. Cohron
Mike Maxwell, No. 10875-49
Travis W. Cohron, No. 29562-30
**CLARK, QUINN, MOSES, SCOTT & GRAHN, LLP**
320 N. Meridian Street, Suite 1100
Indianapolis, IN 46204
Telephone: (317) 637-1321
Fax: (317) 687-2344
mmaxwell@clarkquinnlaw.com
tcohron@clarkquinnlaw.com
***Counsel for the Plaintiff***